UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00018-GNS-HBB

BURKESVILLE HARDWOODS, LLC                                                                    PLAINTIFF

v.

TRAVIS COOMER;
UNKNOWN DEFENDANT NO. 1; and
UNKNOWN DEFENDANT NO. 2                                                                      DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction (DN 19)[1] and Motion for Summary Judgment (DN 21). These motions are now ripe for review. For the reasons that follow, Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction is **DENIED** and Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

In 1987, the R.T. Baker Estate entered into an oil and gas lease (the "Lease") for a tract of land in Cumberland County, Kentucky (the "Property") with Travis Coomer Drilling, Inc. as the lessee.[2] (Pl.'s Mot. TRO Ex. B, at 1 , DN 19-3 [hereinafter Oil & Gas Lease]). The Lease provided

---

[1] Plaintiff mischaracterizes one of the forms of requested relief as a temporary injunction. While the Kentucky Rules of Civil Procedure provide for temporary injunctions, the Federal Rules of Civil Procedure provide for preliminary injunctions. *Compare* CR 65.01, *with* Fed. R. Civ. P. 65(a). Because this Court must apply federal procedural law to this action, the Court will consider and characterize Plaintiff's request as a motion for a preliminary injunction. *See Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019).

[2] Although the Lease referenced "Travis Coomer Drilling, Inc.," the parties to this action are in agreement that the actual entity's name was "Travis Coomer Drilling Company." (Compl. ¶ 9, DN 1; Answer & Countercl. 1-2, DN 6). For ease of reference, this entity will be referred to as "TCD". Plaintiff Burkesville Hardwoods LLC ("Hardwoods") is the successor of the estate's interest in the Property. Defendant Travis Coomer ("Coomer") is the owner of TCD.

1

that TCD was allowed to remove oil and gas from the Property with payment of royalties to the Lessor.  (Compl. ¶ 9; Answer & Countercl. 3; Oil & Gas Lease 1).

TCD was administratively dissolved by the Kentucky Secretary of State on September 30, 2014.  (Pl.'s Mot. TRO Ex. G, at 1-3, DN 19-9).  Thereafter, Hardwoods incorporated a Kentucky corporation under the name "Travis Coomer Drilling Company" on April 10, 2017.[3]  (Pl.'s Mot. TRO Ex. H, at 1, DN 19-10).

Hardwoods filed this action against Coomer and two unknown defendants on January 29, 2018, claiming that Coomer has no legal right to remove oil and gas from the Property.  (Compl. ¶¶ 49-52).  Coomer has asserted counterclaims in this action to enforce the Lease, in addition to alleging that Hardwoods misappropriated his identity by incorporating TCD2.  (Answer & Countercl. 7, 9).  Coomer also claims that Hardwoods tortiously interfered with contracts he has with third parties and with the Lease.  (Answer & Countercl. 9-11).

Hardwoods has moved for a preliminary injunction and temporary restraining order enjoining Coomer from entering on and taking oil and gas from Property and from obtaining the requisite permits and bonds to be able to lawfully extract oil and gas from the Property.  Hardwoods has also moved for summary judgment seeking to void the Lease and to dismiss Coomer's counterclaims.  (Pl.'s Mot. TRO, DN 19; Pl.'s Mot. Summ. J., DN 21).

---

[3] This later entity, completely unrelated to Coomer or TCD, will be referred to as "TCD2."

## II. JURISDICTION

This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . the citizens of different States." 28 U.S.C. § 1332(a)(1).[4]

## III. DISCUSSION

### A. Motion for Temporary Restraining Order or Preliminary Injunction

Hardwoods first seeks a temporary restraining order or preliminary injunction to prevent Coomer from removing oil and gas from the Property and to prevent Coomer from obtaining the requisite permits and bonds to lawfully extract oil and gas therefrom. Federal courts sitting in diversity apply federal procedural jurisprudence regarding the factors to consider in granting a preliminary injunction, except state law is applied when determining whether the movant possesses a substantial likelihood of success on the merits of the movant's underlying diversity action. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) (citations omitted).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Evaluating a request for the "extraordinary remedy" of a preliminary injunction and temporary restraining order requires considering and balancing four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer

---

[4] In his Answer, Coomer contends that Hardwoods has failed to meet the diversity jurisdiction requirements. (Answer & Countercl. 2-3, 7). Based on the information in the record, Hardwoods is incorporated in Oklahoma and has its principal place of business in Louisiana, while Coomer resides in Kentucky, and the amount in controversy appears to be over the $75,000 threshold. (Compl. ¶¶ 2-3; Def.'s Resp. P's Mot. Summ. J. Ex. 1, at 1, DN 25-1). Thus, diversity jurisdiction exists.

irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.[5] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (citations omitted); *Adams v. Fed. Express Corp.*, 547 F.2d 319, 323 (6th Cir. 1976) (citing *N. Avondale Neighborhood Ass'n v. Cincinnati Metro. Hous. Auth.*, 464 F.2d 486, 488 (6th Cir. 1972)); *see also* Fed. R. Civ. P. 65. This Court will make specific findings concerning each factor, "unless fewer are dispositive of the issue." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985) (citing *United States v. Sch. Dist. of Ferndale*, 577 F.2d 1339, 1352 (6th Cir. 1978)). The movant bears the burden of making a "clear showing" of the need for the grant of a preliminary injunction and temporary restraining order. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Gonzales v. O Centro Espirita Beneficente Uniã do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").

Hardwoods first argues that it will sustain immediate and irreparable injury from the denial of its motion for preliminary injunction. (Pl.'s Mem. Supp. Mot. TRO 9-10, DN 19-1). The extent of its argument on this point is that Coomer will continue to remove valuable oil and gas from the property without the grant of an injunction, which will additionally harm its "business interests, goodwill and reputation [which] are not susceptible to monetary valuation." (Pl.'s Mem. Supp. Mot. TRO 10).

A review of Hardwoods' motion, however, reveals nothing beyond conclusory statements and unsupported arguments. Hardwoods identifies no injury that cannot be remedied with money damages—the entirety of the injury asserted by Hardwoods is monetary harm to its business. "[A]

---

[5] Regardless of whether Hardwoods' motion is termed a motion for a preliminary injunction or temporary restraining order, these same four factors are considered. *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The only support Hardwoods provides regarding the inability to compute monetary damages is its naked assertion that "business interests, goodwill and reputation [are] not susceptible to monetary valuation." (Pl.'s Mem. Supp. Mot. TRO 10).

It is true that "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Scott*, 973 F.2d at 511 (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). Additionally, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id*. at 512 (citing *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)). But as Hardwoods carries the burden of proof and persuasion in attempting to obtain the extraordinary remedy of a preliminary injunction and temporary restraining order, the conclusory statement that its business will suffer incalculable losses is woefully insufficient. Hardwoods has not articulated how the gas and oil on the Property affects or plays a role in the operation of its business and how the continued removal of those resources will harm its goodwill and reputation. Hardwoods has failed to articulate any discernible irreparable harm from the denial of its motion for injunctive relief.

Hardwoods additionally argues that equity favors granting the preliminary injunction because its effect would only prevent Coomer from removing gas and oil from the Property. (Pl.'s Mem. Supp. Mot. TRO 12). It contends that keeping "[t]he oil and gas . . . in the same place that it is currently located until this litigation is resolved" is the most equitable approach at this juncture. (Pl.'s Mem. Supp. Mot. TRO 12).

The balance of equities in this case does not favor Hardwoods. Refusing to allow Coomer to access oil and gas, which he has the purported right to do as owner of the business with a valid

lease to do so, would be equally as harmful as allowing Coomer access to the minerals without valid rights. In the first situation, monetary harm inures to Coomer and his business, while in the second situation, the same monetary harm is visited upon Hardwoods. Hardwoods has not supported its contention that its damages are more substantial than the harm to Coomer and his business with the issuance of an order granting injunctive relief.

Additionally, while Coomer's purported violation of Kentucky law in operating oil and gas wells allegedly without the requisite permits and bonds to do so favors Hardwoods' argument, Hardwoods has also acted unscrupulously. Hardwoods seeks to prevent Coomer from exercising his rights on a facially valid lease but has refused to cash royalty checks from Coomer and has incorporated a company using Coomer's name for no discernible reason other than disrupting Coomer's business operations.[6] (Def.'s Resp. Pl.'s Mot. Summ. J. 10, DN 25; Coomer Aff. ¶¶ 9-18, DN 25-3; Collins Aff. ¶¶ 6-14, DN 25-4; Key Aff. ¶¶ 2-9, DN 25-5). Based on Hardwoods' dubious actions, equity does not weigh in its favor. At best the equities balance here and, in fact, likely weigh in Coomer's favor.

Hardwoods next contends that granting its request will further serve the public interest by protecting its business interests in furtherance of Kentucky public policy "to enforce contractual, statutory, and common law rights" of businesses. (Pl.'s Mem. Supp. Mot. TRO 12). Hardwoods claims that "[t]he public interest will be served by enjoining [Coomer's] conduct causing

---

[6] Hardwoods argues that, in filing Articles of Incorporation in Coomer's business's name, it has simply implemented the general business strategy termed a "freeze-out." (Pl.'s Mem. Supp. Mot. Summ. J. 18, DN 21-1). This assertion, however, appears to be a misuse of the referenced business term. "The term 'freeze out' refers to a transaction where a 'controlling shareholder' forces all the minority shareholders to surrender their shares and, as a result, acquires 100% ownership of the corporation." Peter V. Letsou & Steven M. Hass, *The Dilemma That Should Never Have Been: Minority Freeze Outs in Delaware*, 61 Bus. Law. 25, 30 (Nov. 2005). Hardwoods, on the other hand, is apparently attempting to hamstring its business rival by incorporating an entity using Coomer's name and matching exactly the name of Coomer's now-dissolved corporation, TCD.

irreparable damage to Plaintiffs' legitimate business interests developed over several years." (Pl.'s Mem. Supp. Mot. TRO 12). If the public interest would be served by protecting Hardwoods' business interests, however, then the public interest would also be served by protecting Coomer's business interests. Hardwoods does not explain how the public interest is furthered by protecting its business interests over Coomer's.

More importantly, "[t]he public has a strong interest in holding private parties to their agreements." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017) (citing *Certified Restoration*, 511 F.3d at 551). One of the requested remedies Hardwoods in this case is the voiding of the Lease giving rise to obligations Hardwoods owes to Coomer's business per the Lease. In that vein, the public interest is better served by denying, rather than granting, Hardwoods' motion for a preliminary injunction and temporary restraining order, as denying Hardwoods' request for a preliminary injunction holds Hardwoods to its lease obligations, which is the current status quo.

Finally, Hardwoods asserts it is likely to succeed on the merits of its theft claims against Coomer for the reason that Coomer will be unable to prove a valid interest in the gas and oil. (Pl.'s Mem. Supp. Mot. TRO 10-12). In order to succeed on its claims, however, Hardwoods must either have this Court void the Lease or prove that Coomer and the other unknown defendants had no authority to remove the oil and gas from the Property. As explained in the next section of this opinion, Hardwoods offers no legitimate reason at this juncture for voiding the Lease, which gives Coomer, as apparent successor to TCD's interest in the Lease, the right to remove oil and gas from the Property.

In sum, Hardwoods has failed to make a sufficient showing to warrant the issuance of a preliminary injunction and temporary restraining order and its request in that regard is denied.

## B. Motion for Summary Judgment

Hardwoods also moves for summary judgment on the issue of the validity of the Lease, which it claims is null and void, and on Coomer's counterclaims. "Federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996).

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

1. *Voiding of the Lease*

Hardwoods first proposes that any action maintained by Coomer on the Lease is barred by the statute of limitations. (Pl.'s Mem. Supp. Mot. Summ. J. 12-13). Hardwoods appears to be making the argument that someone privy to the Lease needed to proactively assert the validity of the Lease within 15 years of its creation—i.e., somewhere between 1987 and 2002, or within one year of the death of one of the parties to the Lease. The proposition, then, is that a party to a lease must bring a declaratory judgment action establishing the validity of the lease within a certain time frame or forever lose the ability to enforce the lease.

It is not incumbent upon a party to a contract, however, to establish the validity of the contract within a certain amount of time after the contract is created to be able to later enforce that contract. Rather, it is the injury arising as a result of a breach of the contract that starts the running of the statute of limitations. *See* KRS 413.090(2) (providing that a breach of contract action "shall be commenced within fifteen (15) years after the cause of action first accrued . . . ."); *Hoskins' Adm'r v. Ky. Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957) ("[A]n action *accrues* at the time of infliction of a wrong or breach of a contract." (emphasis in original)). Hardwoods' interference with Coomer's purported rights under the Lease could not have occurred any earlier than June 27, 2015, the date Hardwoods obtained the Property. (Pl.'s Mot. TRO Ex. A, at 7, DN 19-2). All of Coomer's counterclaims relate to acts by Hardwoods during its tenancy which are well within the 15-year threshold established by KRS 413.090(2).

Second, Hardwoods argues that TCD may not maintain an action on the Lease. (Pl.'s Mem. Supp. Mot. Summ. J. 13-15). Hardwoods contents that because TCD and TCD2 are eponymous and TCD has been administratively dissolved, neither company has a right to maintain an action for enforcement of the Lease as Kentucky law bars dissolved companies from maintaining breach

9

of contract actions.  (Pl.'s Mem. Supp. Mot. Summ. J. 13-15).  As such, Hardwoods proposes that no one can enforce the Lease, which therefore must be rendered void.

Hardwoods' assertion in this regard has some superficial support.[7] *Diktic, Inc. v. Somerset Refinery, Inc.*, Nos. 2002-CA-000301-MR, 2003 WL 21673962, at *2 (Ky. App. July 18, 2003) (holding that an administratively dissolved corporation lacks the capacity to sue).  *Diktic* and other Kentucky precedent establishing this rule, however, predated the enactment of a Kentucky statute in 2010 providing that the "[d]issolution of a corporation shall not: . . . [p]revent commencement of a proceeding by . . . the corporation in its corporate name . . . ." KRS 271B.14-050(2)(f).  A secondary source provides a helpful explanation of the effect of dissolution on the ability of an administratively dissolved corporation to enforce a lease:

> The dissolution of a corporation, either by the filing of articles of dissolution by the Kentucky secretary of state or by decree of the court, does not take away or impair any remedy available to or against such corporation, or abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution.  Any such suit by or against the corporation may be prosecuted or defended by the corporation in its corporate name.  In addition, the shareholders, directors and officers shall have the power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.  Kentucky statutes also extend the life of the corporation after administrative dissolution, stating "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under KRS 271B.14-050."  In interpreting Kentucky's administrative dissolution statutes, courts have generally found that the corporation's existence continues well beyond the actual dissolution.

4A Robert W. Keats et al., *Kentucky Practice Series:  Methods of Practice* § 14:82 (Nov. 2018 update) (citations omitted).  Hardwoods is incorrect when it asserts that simply because TCD was

---

[7] Hardwoods only cites to *Martin v. Pack's Inc.*, 358 S.W.3d 481 (Ky. App. 2011), in support of this proposition.  That case, however, did not address a corporation's ability to file suit after being administratively dissolved; rather, the issue in that case was whether the individual owners of an administratively dissolved corporation can be held personally liable for the corporation's debts.  *Id*. at 483-84.

administratively dissolved that entity cannot maintain an action to enforce the Lease. Nor did administrative dissolution transfer title of the Lease in any way. KRS 271B.14-050(2)(a) ("Dissolution of a corporation shall not[] [t]ransfer title to the corporation's property . . . ."). Because title to TCD's interest in the Lease was not destroyed by the corporation's administrative dissolution, Hardwoods is incorrect when it asserts that the Lease should be rendered void for unenforceability.

Hardwoods additionally argues that Coomer, individually, "lacks the capacity" to enforce the Lease. (Pl.'s Reply Mot. Summ. J. 2-3, DN 28). Hardwoods argues that Coomer does not have a legal right to enforce the Lease because he no longer owned TCD upon its administrative dissolution and Hardwoods' incorporation of a new business in that name. Hardwoods, however, points to no authority supporting the assertion that filing Articles of Incorporation in an administratively dissolved entity's former name gives the new corporation ownership over the previous entity itself. Coomer did not lose ownership of TCD simply because Hardwoods incorporated TCD2 after TCD's administrative dissolution. Neither does Hardwoods point to any authority supporting its claim that a business owner loses ownership of an entity that has been administratively dissolved, nor the proposition that Hardwoods somehow acquired an interest in the Lease because it now operates under the name matching the lessee under the Lease.

Next, Hardwoods believes the habendum clause in the Lease, in conjunction with Kentucky law, voids the Lease. (Pl.'s Mem. Supp. Mot. Summ. J. 15-16). The habendum clause in the Lease provides that the lessee will have the right to access the Property for oil and gas removal "as long thereafter as oil and gas, or either of them, is produced from said land by the lessee." (Oil & Gas Lease 1). Hardwoods argues that Coomer's failure to file appropriate production reports and taxes

11

rebuts the notion that his operation was "productive" or "profitable." (Pl.'s Mem. Supp. Mot. Sum. J. 16).

Hardwoods' argument that the purported violation of the habendum clause in the Lease voids the contract lacks merit. It is true that oil and gas leases in Kentucky can lapse for non-production. *Lamb v. Vansyckle*, 266 S.W. 253, 254 (Ky. 1924). Coomer, however, has proffered evidence rebutting the assertion that the Lease has not been productive, consisting of three affidavits of individuals attesting that Hardwoods has been sent checks for royalties due under the Lease. (Def.'s Resp. Pl.'s Mot. Summ. J. 10; Coomer Aff. ¶¶ 9-18; Collins Aff. ¶¶ 6-14; Key Aff. ¶¶ 2-9). Additionally, Coomer acknowledges that production stopped for a period of time but alleges that the cessation was caused by damage done to his equipment by loggers employed by Hardwoods. (Def.'s Resp. Pl.'s Mot. Summ. J. 2). At the very least, genuine issues of material fact remain regarding the production of oil and gas from the Property which preclude summary judgment.

Hardwoods next argues that Coomer's failure to comply with Kentucky law voids the Lease because compliance with state law is an implicit condition that must be complied with for continued validity. (Pl.'s Mem. Supp. Mot. Summ. J. 17). In this regard, Hardwoods claims Coomer: (1) has not paid any taxes on the profits obtained from the oil and gas extraction; (2) lacks the requisite permitting and bonding to lawfully operate the oil and gas wells; and (3) failed to file production reports with the Kentucky Energy and Environment Cabinet.

Hardwoods' first contention is without evidentiary support in the record; Hardwoods presents no evidence establishing that Coomer has failed to pay taxes. Although Hardwoods argues that Coomer admitted he has not filed state or federal tax returns for TCD, that does not mean Coomer did not pay taxes on the profits generated from the oil and gas wells individually or

in some other capacity. Regardless, any failure to pay taxes would be within the auspices of the taxing authorities but would not be grounds to void Hardwoods' lease obligations.

Hardwoods' second contention is undermined by its statements that "*Hardwoods . . . respectfully brings to the Court's attention that any and all wells . . . on the subject property were permitted and bonded in the name of Mitchell Coomer, deceased. More specifically, any and all permits and bonds required by the Division of Oil and Gas are all currently held in the name of Mitchell Coomer, deceased*." (Pl.'s Mem. Supp. Mot. Summ. J. 6 (emphasis in original)). These statements suggest that the proper permits and bonds for operation of the wells have been obtained, just simply in the name of one of the other agents of the relevant entities. Although Mitchell Coomer's name appears on the permit applications, the permits list TCD as the "Drilling Contractor" and Mitchell Coomer as its vice president. (Pl.'s Mot. Summ. J. Exs. C1 & C2, DN 21-4 to 21-5). Hardwoods does not articulate how these circumstances operate to void the Lease.

As for Coomer's failure to file production reports for the wells as purportedly required by Kentucky law, courts do not void contracts when "the illegality of work done . . . is minor or slight . . . ." 8 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 19:52 (4th ed. July 2019 update) (citing *Holloway & Son Constr. Co., Inc. v. Mattingly Bridge Co., Inc.*, 581 S.W.2d 568 (Ky. 1979); *Apex Contracting, Inc. v. William Robinson Constr. Co., Inc.*, 581 S.W.2d 573 (Ky. 1979)). Hardwoods once again fails to explain how Coomer's failure to file required production reports with the state regulatory authority warrants voiding the Lease.

Finally, Hardwoods argues that the Lease was not signed by the lessee and is thus unenforceable for failing to meet the requirements of the statute of frauds. (Pl.'s Reply Mot. Summ. J. 3-4). Kentucky law, however, only requires the "party to be charged" to sign a lease. KRS 371.010(8) ("No action shall be brought to charge any person . . . [u]pon any . . . agreement

. . . for the . . . lease of any real estate . . . unless the . . . agreement . . . be in writing and signed by the party to be charged therewith . . . ."). Here, "the party to be charged" is the owner of the real estate, which was the Baker Estate when the lease was executed. *Green v. Elliott Cty. Bd. of Educ.*, 51 S.W.2d 459, 459 (Ky. 1932) ("The party to be charged is the owner or vendor of the real estate . . . ." (citations omitted)). The Lease contains the signatures by Hardwoods' predecessors-in-interest. (Oil & Gas Lease 1). Therefore, the statute of frauds defense lacks merit.

In conclusion, Hardwoods' arguments for voiding the Lease at this juncture of the case are rejected. The Court will not invalidate the Lease.

### 2. *Dismissal of the Counterclaims*

Coomer asserts three counterclaims: (1) misappropriation of his name and identity theft; (2) tortious interference with a contract; and (3) interference with the operation of a lease. (Answer & Countercl. 9-11). Hardwoods seeks summary judgment on all claims.

Coomer's counterclaim for tortious interference with the operation of a lease will be dismissed with prejudice. One cannot sue a party to a contract for tortious interference with that contract. *See Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. App. 1977) (adopting Restatement (Second) of Torts, § 766 (1939), which requires the tortfeasor to be a third party, not a party to the contract or such party's agent); *see also Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. App. 2011). Rather, the proper claim is breach of contract.[8] As such, because Coomer cannot maintain against Hardwoods a claim for a tortious

---

[8] It appears that Coomer's claim here is a tort claim for interference with the operation of a lease, not a breach of contract claim. Coomer titled his claim as one for interference with operation of lease, not for breach of the lease. (Answer & Countercl. 10-11). In moving for partial summary judgment, Hardwoods construed Coomer's claim to be one of tort, and Coomer did not refute that contention in his response. (Pl.'s Mem. Supp. Mot. Sum. J. 19).

interference with the operation of the Lease to which Hardwoods is a party, that claim is dismissed with prejudice.

Coomer's counterclaim for tortious interference with a contract survives. Hardwoods' only argument to refute Coomer's tortious interference with a contract claim is that Coomer is a party to the Lease. Hardwoods fails to recognize that Coomer here, unlike in his claim for tortious interference with the Lease, is alleging that Hardwoods interfered with the business contracts Coomer has with *third parties*, not any contract between Hardwoods and Coomer. (Answer & Countercl. 9-10). The third-party interference claims will be allowed to proceed.

Coomer's misappropriation claim against Hardwoods for filing Articles of Incorporation under the name "Travis Coomer Drilling Company" also survives. The Kentucky Supreme Court in *Montgomery v. Montgomery*, 60 S.W.3d 524 (Ky. 2001), explained that the "right of publicity protects the right to control the commercial value of one's identity." *Id*. at 528. "[I]t is clearly the commercial interests in one's identity that the appropriation prong of tort serves to protect the most." *Id*. (citing Restatement (Second) of Torts § 652C cmt. a). As this Court has recognized before, the Kentucky Supreme Court adopted the principles of the invasion of privacy tort from the Restatement (Second) of Torts. *Thornton v. W. & S. Fin. Grp. Beneflex Plan*, 797 F. Supp. 2d 796, 813 (W.D. Ky. 2011) (citing *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981)). A branch of this tort is a cause of action for the appropriation of one's name or likeness, which the Restatement (Second) for Torts defines as a claim arising when "[one appropriates to his own use or benefit the name or likeness of another . . . ." Restatements (Second) of Torts § 652C.

Hardwoods cannot refute that Coomer's given name is the primary component of the corporate name used by Hardwoods in incorporating the new entity. Although Hardwoods asserts

Coomer is currently not legally entitled to use of the name "Travis Coomer Drilling Company," Hardwoods cannot refute the potential commercial benefit to Hardwoods by appropriating Coomer's name. Whether Hardwoods obtained a benefit with its use of Coomer's name is a factual issue precluding summary judgment on Coomer's misappropriation claim.

In sum, Coomer's counterclaim for interference with the Lease is dismissed with prejudice, while Coomer's misappropriation and interference with other contracts claims survive.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction (DN 19) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (DN 21) is **GRANTED IN PART** and **DENIED IN PART**. Defendant Travis Coomer's counterclaim for tortious interference with the lease is **DISMISSED WITH PREJUDICE**, while his counterclaims for misappropriation and tortious interference with contracts between Defendant Travis Coomer and third parties survive. The Court does not void the Lease.

Greg N. Stivers, Chief Judge
United States District Court

January 17, 2020

cc: counsel of record