UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00018-GNS-HBB

BURKESVILLE HARDWOODS, LLC                                                                PLAINTIFF

v.

TRAVIS COOMER et al.                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on competing motions for summary judgment (DN 89, 90). The motions are ripe for adjudication.

**I.      BACKGROUND**

In 1987, the R.T. Baker Estate, the predecessor of Plaintiff Burkesville Hardwoods, LLC ("Hardwoods"), entered into an oil and gas lease (the "Lease") for a tract of land in Cumberland County, Kentucky (the "Property") with lessee Travis Coomer Drilling, Inc., which Defendant Travis Coomer ("Coomer") owns.[1]  (Pl.'s Mot. TRO Ex. B, at 1, DN 19-3).  The Lease provided that Travis Coomer Drilling was allowed to remove oil and gas from the Property with payment of royalties to the Lessor.  (Compl. ¶ 9, DN 1; Answer & Countercl. 3, DN 6; Pl.'s Mot. TRO Ex. B, at 1).

Travis Coomer Drilling, Inc. was administratively dissolved by the Kentucky Secretary of State on September 30, 2014.  (Pl.'s Mot. TRO Ex. G, at 1-3, DN 19-9).  Thereafter, Hardwoods incorporated a Kentucky corporation under the name "Travis Coomer Drilling Company" on April 10, 2017.  (Pl.'s Mot. TRO Ex. H, at 1, DN 19-10).

---

[1] Although the Lease referenced "Travis Coomer Drilling, Inc.," the parties to this action agree that the entity's actual name was "Travis Coomer Drilling Company."  (Compl. ¶ 9, DN 1; Answer & Countercl. 1-2, DN 6).  Plaintiff Burkesville Hardwoods, LLC ("Hardwoods") is the successor of the estate's interest in the Property.  Defendant Travis Coomer ("Coomer") is the owner of Travis Coomer Drilling, Inc.

1

Hardwoods filed this action against Coomer and two unknown defendants on January 29, 2018, claiming that Coomer has no legal right to remove oil and gas from the Property. (Compl. ¶¶ 11-15, 49-52). Coomer has asserted counterclaims alleging that Hardwoods misappropriated his identity by incorporating Travis Coomer Drilling Company and that Hardwoods tortiously interfered with contracts he has with third parties. (Answer & Countercl. 7, 9-11).

In 2019, Hardwoods moved for summary judgment seeking to void the Lease and to dismiss Coomer's counterclaims. (*See* Pl.'s Mem. Supp. Mot. Summ. J., DN 21-1). The Court denied the motion except as to one of Coomer's counterclaims. (Mem. Op. & Order 16, DN 34). Hardwoods has now filed a renewed motion for summary judgment, and Coomer has moved for summary judgment, addressing the same issues. (Pl.'s Mot. Summ. J., DN 89; Def.'s Mot. Summ. J., DN 90).

## II.  JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332.

## III.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment.  *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION

Both parties move for summary judgment on the same issues:  (1) whether the Lease has terminated by its own terms (*ipso facto* termination); and (2) Coomer's counterclaims.  (Pl.'s Mot. Summ. J. 13, 18, 21; Def.'s Mot. Summ. J. 6-10).

### A.    Termination of The Lease

Hardwoods argues that the lease should be found to have been terminated by its own terms. (Pl.'s Mot. Summ. J. 13).  Coomer responds that Hardwoods may not raise this argument because it did not plead termination of the lease in the Complaint and because Hardwoods' argument fails on the merits.  (Def.'s Resp. Pl.'s Mot. Summ. J. 4-5, DN 91).

#### 1.    *Hardwoods' Failure to Plead* Ipso Facto *Termination*

In his motion and in response to Hardwoods' motion, Coomer notes that Hardwoods did not plead termination of the lease in the Complaint.  (Def.'s Resp. Pl.'s Mot. Summ. J. 4; Def.'s Mot. Summ. J. 8; *see* Compl.).  This is inapposite, however, as the Sixth Circuit recently made clear that courts are not limited by the parties' pleading when considering the validity of an oil and gas lease. *Bluegrass Materials Co. v. Freeman*, 54 F.4th 364, 370 (6th Cir. 2022) (citing *Delta Gas Corp. v. Thompson*, 951 F.2d 348, 1991 WL 256568, at *2 (6th Cir. Dec. 3, 1991)) ("Courts may analyze a lease for termination under all three grounds depending on the facts and circumstances of a given case, and we are not limited to only considering the grounds analyzed by the district court or those pled by the parties.").

Furthermore, the lease is central to Hardwoods' claims, and therefore the validity of the Lease is a threshold question in determining whether Coomer has breached the lease or any fiduciary duties under the lease as alleged in the Complaint. Therefore, despite no specific reference to the lease terminating by its own terms within the Complaint, the issue is appropriate for consideration.

### 2. Ipso Facto *Termination*

Under Kentucky law, the habendum clause of an oil and gas lease contains the implied term that the lessee must produce oil in "paying quantities." *See Bluegrass Materials*, 54 F.4th at 371 (citation omitted). "Kentucky courts define 'paying quantities' as 'such quantities as are susceptible of division between the parties and as will yield a royalty to the lessor that justifies the occupancy of and interference with his use of his lands by the operations.'" *Id.* (quoting *Baker v. Magnum Hunter Prod., Inc.*, 473 S.W.3d 588, 596 (Ky. 2015)). "[W]hether oil is found in paying quantities is a question of fact, to be determined from all the evidence in the case with reference to the rights of the lessor as well as the lessee." *Id.* (alteration in original) (quoting *Union Gas & Oil Co. v. Adkins*, 278 F. 854, 857 (6th Cir. 1922)).

Hardwoods argues that *Cumberland Contracting Co. v. Coffey*, 405 S.W.2d 553 (Ky. 1966), is controlling. (Pl.'s Mot. Summ. J. 14-15). In *Coffey*, the Kentucky's highest court affirmed the termination of an oil and gas lease applying the definition of "paying quantities" used above. *See Coffey*, 405 S.W.2d at 555. There, the lessee had oil and gas rights in 410 acres of land but produced only one and one-half barrels of oil every two weeks. *Id.* at 555. Hardwoods points out that Coomer's production, if averaged over an entire year, is 1.55 barrels per two weeks despite having a tract twice as large as that in *Coffey* and with eight times as many wells. (Pl.'s Mot. Summ. J. 15). Hardwoods also supplied the declaration of Chad Hickman, who has an agreement to harvest and purchase timber from the Property, who opined that "[t]he inconvenience of avoiding the wells and flowlines in order to efficiently cut and remove timber from the property greatly exceeds the value of royalties produced by Coomer." (Hickman Decl. ¶¶ 1-3, 8, DN 89-2).

4

While *Coffey* certainly bears some similarity to the instant facts, the Sixth Circuit was clear in *Bluegrass Materials* that whether a lessee is generating paying quantities is an issue for the trier of fact. *Bluegrass Materials*, 54 F.4th at 372. Notwithstanding Hickman's conclusory evaluation of the relative value of Coomer's production and interference, a reasonable juror could conclude that Coomer's interference—only visiting the Property seven to eight weeks a year and only using a portable pump—is minimal and therefore justified despite the low oil production. (*See* Coomer Dep. 49:10-15, July 12, 2022, DN 89-6; Def.'s Answers Pl.'s 2d Interrogs. ¶ 7, DN 89-8). Accordingly, Hardwoods' motion is denied as to *ipso facto* termination.

Coomer offers several arguments for the Court to grant summary judgment in his favor on the termination claim. First, Coomer argues that Hardwoods never gave notice of insufficient production. (Def.'s Reply Mot. Summ. J. 8-9, DN 95). This argument conflates the requirements for forfeiture and *ipso facto* termination. *See Bluegrass Materials*, 54 F.4th at 370. Coomer contends that the Sixth Circuit did not opine in *Bluegrass Materials* on whether notice is required for a lease to terminate by its own terms. (Def.'s Reply Mot. Summ. J. 8-9). In *Bluegrass Materials*, the Sixth Circuit concluded that the plaintiff's failure to provide notice of insufficient oil production precluded termination under a theory of forfeiture. *Bluegrass Materials*, 54 F.4th at 370. The Court then went on to consider whether the lease had terminated by its own terms. *Id.* While the Sixth Circuit did not explicitly address whether notice is required for an oil and gas lease's termination by its own terms, its determination that a genuine issue of material fact remained as to whether the defendant produced oil in "paying quantities" despite its acknowledgement that no notice had been given confirms that notice is not required for *ipso facto* termination. *See id.* at 372.

Coomer makes a bare reference to *Northrup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 07-30-ART, 2008 WL 818995 (E.D. Ky. Mar. 25, 2008), in support of his argument that notice is required under Kentucky law. *Northrup Properties* does not support this proposition. Indeed, the court remarked there that "[a] lessee must comply with Kentucky's notice requirement

5

*unless* the lease is cancelled in one of three ways: (1) termination by its own terms; (2) forfeiture; or (3) abandonment." *Id.* at *2 (emphasis added) (citing *Hiroc Programs, Inc. v. Robertson*, 40 S.W.3d 373, 377 (Ky. App. 2000)). Although the court went on to find that notice was required in many circumstances, under the facts in *Northrup Properties* the lease allowed the lessee to pay rent to maintain the lease rather than produce oil. *See id.* at *2-3, *5-6. The lessee had paid over $100,000 in rent and the lessor, rather than give notice that the lessee needed to begin production pursuant to the lease, attempted to simply terminate the lease without notice. *Id.* at *6. The court concluded that "law as well as simple fundamental fairness" did not allow such a result. *Id.* at *6. The case at bar presents no such issue of reliance but instead asks whether Coomer's production has been sufficient to justify the existence of the lease. Accordingly, this argument is not well-taken.

Coomer also argues waiver, pointing to evidence that Hardwoods received royalty payments before filing suit but after being put on notice that its Property was subject to the lease. (Def.'s Mot. Summ. J. 10). *Bluegrass Materials* also squarely addresses this, holding that accepting royalties prior to filing suit is not a waiver of an *ipso facto* termination claim. *Bluegrass Materials*, 54 F.4th at 372. Accordingly, this argument lacks merit.

Finally, Coomer makes what is essentially an unclean hands argument—that but for Hardwoods interference in his attempts to extract oil from the Property, he would have produced more oil. (*See* Def.'s Mot. Summ. J. 7-8). As Hardwoods points out, Coomer's production records show similar levels of production prior to Hardwoods' acquisition of the Property. (Pl.'s Resp. Def.'s Mot. Summ. J. 1-2, DN 92; *see* Coomer Aff. Ex. 1 (PageID # 680), DN 25-3). Accordingly, there is at least a genuine issue of fact as to whether Coomer's production levels have been impacted by Hardwoods' conduct.

6

### 3. *Conclusion*

A genuine issue of fact remains as to whether Coomer's production was sufficient to justify his occupancy of and interference with Hardwoods' use of its land. Accordingly, both motions for summary judgment are denied as to the issue of *ipso facto* termination.

### B. **Defendants' Counterclaims**

The parties also seek summary judgment on Coomer's remaining counterclaims for misappropriation of Coomer's name and tortious interference with contract. (*See* Pl.'s Mot. Summ. J. 18-22; Def.'s Mot. Summ. J. 10-14).

### 1. *Misappropriation*

Coomer's claim for misappropriation is premised on Hardwoods' use of the name "Travis Coomer Drilling Company." (Answer & Countercl. 9).

In its disposition of Hardwoods' first motion for summary judgment, the Court held that "[w]hether Hardwoods obtained a benefit with its use of Coomer's name is a factual issue precluding summary judgment on Coomer's misappropriation claim." (Mem. Op. & Order 16). Hardwoods now argues that, with the benefit of discovery, the undisputed facts establish that "Hardwoods never sought to use the name [Travis Coomer Drilling Company] to its benefit, and the fact that Coomer's name appears in the company name is only incidental to why the name was registered." (Pl.'s Mot. Summ. J. 19).

The parties both rely on Section 652C of the Restatement (Second) of Torts to define the tort. (*See* Pl.'s Mot. Summ. J. 19; Def.'s Resp. Pl.'s Mot. Summ. J. 7-8). The Restatement explains that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C (Am. L. Inst. 1977). As this Court has explained, "[i]n order to impose liability under this section, '"the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness."'" *Thornton*

7

*v. W. & S. Fin. Grp. Beneflex Plan*, 797 F. Supp. 2d 796, 814 (W.D. Ky. 2011) (quoting *Foster v. Livingwell Midwest, Inc.*, 865 F.2d 257, 1988 WL 134497, at *2 (6th Cir. Dec. 16, 1988)).  As a sister court noted:

> It is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or identity.

*Int'l Bhd. of Teamsters Loc. 651 v. Philbeck*, 464 F. Supp. 3d 863, 873 (E.D. Ky. 2020) (quoting Restatement (Second) of Torts § 652C cmt. c).

Hardwoods does not dispute that it registered Travis Coomer Drilling Company but argues that Coomer has failed to provide any evidence that it took any action or received any benefit as a result.  (Pl.'s Mot. Summ. J. 18-21).  Coomer argues that he need not prove actual damages, as nominal damages may be awarded for a claim of misappropriation.  (Def.'s Reply Mot. Summ. J. 10).  Coomer is correct; however, the availability of nominal damages does not expand the scope of the tort but instead merely provides an opportunity for recovery in the absence of proof of actual damages.  *See, e.g.*, *Thornton*, 797 F. Supp. 2d at 815.  Therefore, this argument has no bearing on whether Hardwoods used Coomer's identity to "obtain for [itself] the values or benefits" of Coomer's name or identity.  *Philbeck*, 464 F. Supp. 3d at 873 (quoting Restatement (Second) of Torts § 652C cmt. c)).

Coomer points primarily to the fact that by registering the company, Hardwoods deprived Coomer of the use of the name.  (Def.'s Resp. Pl.'s Mot. Summ. J. 8-9).  Hardwoods does not dispute that Coomer was unable to register "Travis Coomer Drilling Company" but argues that he could have operated another similarly named business in his own name.  (Pl.'s Resp. Def.'s Mot. Summ. J. 14).

The Restatement offers two helpful illustrations showing the difference between mere use and appropriation.  The first, showing mere use, states:

> ABC is a noted millionaire philanthropist.  Out of admiration for ABC, XYZ adopts the name of ABC, lists himself in the telephone book and the city directory under that

8

> name, informs all of his friends and associates that he wishes to be known by it in the future, and consistently makes use of it. This is not an invasion of the privacy of A.

Restatement (Second) of Torts § 652C cmt. c. The second, showing actual appropriation, states:

> The same facts as [above], with the addition that XYZ, representing himself to be ABC, registers under that name at an expensive summer resort hotel, where he stays for a month, incurring a large bill that he does not pay, on credit extended to him in the belief that he is ABC. This is an invasion of the privacy of ABC.

*Id.*

Viewing the facts in the light most favorable to Coomer, Hardwoods' conduct resembles the former illustration more than the latter. Hardwoods' registration of "Travis Coomer Drilling Company" was nothing more than using Coomer's name without passing itself off as Coomer or otherwise seeking to obtain the value or benefit of Coomer's name or identity. *See Philbeck*, 464 F. Supp. 3d at 873. Coomer would be able to use another name registered with the Kentucky Secretary of State, and Hardwoods' registration that included Coomer's full name shows only use, as opposed to showing appropriation. *See* KRS 14A.3-010(1) ("[T]he real name of an entity or foreign entity shall be distinguishable from any name of record with the Secretary of State."). For instance, Coomer would still presumably be able to incorporate under the name "Travis Coomer Oil and Gas Exploration Corporation" or some other derivative.

Case law also supports this conclusion. For example, in *Thornton*, the plaintiff, a terminated employee, sued his former employer for misappropriation where the defendant had sent a letter to potential customers using the plaintiff's name and identity. *Thornton*, 797 F. Supp. 2d at 813. This Court denied the defendant's motion for summary judgment, reasoning that a reasonable jury could find that the plaintiff's name and likeness had a commercial value to potential customers, and that by sending out a letter with the plaintiff's name the defendant was "attempting to maintain the current customer base built by [the plaintiff] or was cashing-in on the goodwill associated with [the plaintiff]'s name." *Id.* at 814-815. Unlike in *Thornton*, Coomer has pointed to no evidence that

9

Hardwoods ever took any action under the name "Travis Coomer Drilling Company," and he admitted as much in his deposition. (Coomer Dep. 69:13-70:15).

Coomer's final two arguments, that his business declined following Hardwoods' registration of the name and that he was unable to file his taxes, are similarly unavailing. With respect to the loss in revenue, Coomer failed to present any evidence connecting the alleged loss in revenue with Hardwoods' use of "Travis Coomer Drilling Company" following the former entity's dissolution. (*See* Coomer Dep. 69:6-12). With respect to his taxes, Coomer explained in his deposition that his CPA told him that he has been unable to file his taxes for the last three years due to Hardwoods' use of Travis Coomer Drilling Company. (Coomer Dep. 73:25-74:17). Notwithstanding that Coomer's reliance on his CPA's out of court statement would likely be excluded as inadmissible hearsay, Coomer offers no explanation for why Hardwoods' registration of Travis Coomer Drilling Company frustrated his ability to file his taxes. (*See* Coomer Dep. 74:15-23).

"Mere speculation will not suffice to defeat a motion for summary judgment . . . ." *M.T. v. Saum*, 3 F. Supp. 3d 617, 623 (W.D. Ky. 2014). Coomer bears the burden of proof for his counterclaim. Coomer has failed, however, to direct the Court to any evidence based upon which a reasonable juror could conclude that Hardwoods obtained any value or benefit based on Coomer's name or identity. Accordingly, summary judgment is granted in favor of Hardwoods on Coomer's counterclaim for misappropriation.

### 2.  *Tortious Interference with Contract*

Hardwoods argues that Coomer has failed to supply evidence of any contract with which Hardwoods interfered. (Pl.'s Mot. Summ. J. 21-22). Coomer asserts that the record is clear that Coomer lost a significant amount of business after Hardwoods registered "Travis Coomer Drilling Company." (Def.'s Mot. Summ. J. 13-14). In denying Hardwoods' previous motion for summary judgment, the Court's only basis was that Hardwoods incorrectly argued that Coomer could not maintain a tortious interference with contract action against Hardwoods because they are both parties

to the lease, an argument that is not repeated in Hardwoods' instant motion. (Mem. Op. & Order 15; *see* Def.'s Mot. Summ. J. 21-22).

To maintain an action for tortious interference with contract, also known as tortious interference with business relations, a claimant must prove: "(1) the existence of a contract; (2) knowledge of this contract; (3) intent to cause a breach; (4) conduct that caused the breach or prevented the contract from coming into being; (5) damages; and (6) lack of privilege or justification to excuse the conduct." *Griffin v. Jones*, 170 F. Supp. 3d 956, 967 (W.D. Ky. 2016) (citing *Marcus & Millichap Real Est. Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 552-53 (W.D. Ky. 2005)).

Coomer argues that Hardwoods' motion should be denied, and summary judgment should be entered in his favor, because Hardwoods interfered with Coomer's ongoing and prospective business relationships by registering "Travis Coomer Drilling Company." Coomer testified that he began receiving fewer calls after Hardwoods registered "Travis Coomer Drilling Company," and that he "feel[s] like they've cost me a lot of money in the oil business on account of them taking my name." (Coomer Dep. 69:5-12).

These vague assertions are insufficient to create a triable issue of fact on Coomer's counterclaim and certainly do not entitle Coomer to judgment as a matter of law. Coomer has failed to identify with specificity any contract or prospective business relationship with which Hardwoods interfered. This failure is fatal to Coomer's claim. *See Griffin*, 170 F. Supp. 3d at 970-71 ("The Court finds that, as a matter of law, Griffin is entitled to summary judgment on Jones's tortious interference claims because Jones has not identified a contract to which he was a party . . . has failed to show that any contract was breached, and has not identified a prospective business relation.").

Even accepting Coomer's testimony as true, there is simply nothing from which the trier of fact could conclude that his decreased business is related Hardwoods' use of "Travis Coomer Drilling Company." Indeed, Coomer admitted in his deposition that he was unaware of Hardwoods

11

ever soliciting business, opening a bank account, or maintaining a phone number as Travis Coomer Drilling Company. (Coomer Dep. 69:17-70:15).

Accordingly, summary judgment is directed in Hardwoods' favor on Coomer's counterclaim for tortious interference with contract.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 89) is **GRANTED IN PART** as to Defendant's remaining counterclaims, and Defendant's Countercomplaint (DN 6) is **DISMISSED WITH PREJUDICE**.

2. Defendant's Motion for Summary Judgment (DN 90) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

June 27, 2024

cc: counsel of record